GRIFFIN, C.J.,
dissenting.
I respectfully dissent. The Florida Department of Juvenile Justice [“DJJ”] pre-dispositional report had recommended for J.L.O. a restrictiveness level of four (low risk residential), with court ordered counseling for the parents, drug testing and a treatment plan. The DJJ representative orally advised *443 the court: “They’re recommending level four residential. I believe they are targeting the C.A.T.S. program which is a pretty good program for girls 12 to 16, no prior commitments, etc.”
The court inquired about the waiting period and was informed that there could be a two to three month delay because there was no level four placement immediately available. The court then announced its reason for departing from the DJJ recommended placement:
Well, based upon the waiting period before a Level 4 or a Level 6 program is available, that is not a reasonable alternative. Because the moment that this Court places this child either in Level 4 or Level 6, there will be a legal requirement that she be released. If she is released before entering a program, she is likely, based upon what has been placed on the record here, to run away, not to abide by the rules pending commitment. So at this point, the only alternative that I have is to depart upwards to a Level 8 commitment.
I’ll go ahead and enter an adjudication, as well as a finding of delinquency on 97-6602, finding that the violation of community control was in a substantial, material, and an intentional manner by failure to reside on a regular basis at home with her parents, refusing to live at home with her parents, as she has indicated here time and time again.
In 97-5844, the Court enters a finding of delinquency, an adjudication of delinquency. This is the basis for the violation of community control; the assault, 97-5844. The court will voice no objection to a Level 4 or a Level 6 program, if one is found prior to the Level 8 becoming available ....
Although the lower court’s plain purpose was to protect this child by preventing her from running away from home while awaiting level four placement, this “reason” for altering the placement to level eight is not permissible. The majority, by searching the record for other grounds for departure, implicitly agrees this is so. I can only consider what the court explained was its reason— that because level four was not immediately available, he would place her at the first level that was immediately available — level eight. The question that is squarely presented by this seemingly clear explication of the trial judge’s reason for departure is whether the court is empowered to alter the Department of Juvenile Justice’s recommended placement solely for the reason that there is no placement at that level then available. I can find no authority in the statute to do so. Though the lower court has satisfied the statutory requirement of stating the reason for departing from the DJJ recommendation, common sense dictates that not just any reason will do. See Q.L.J. v. State, 714 So.2d 628, 23 Fla. Law Weekly D1781 (Fla. 1st DCA 1998). The reason must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child. See § 985.03(45)(1997).
Section 985.215(10)(a)(Z) (1997)[1] places strict limitations on how long a low or moderate risk adjudicated child can be held in detention. It is plainly contrary to the statutory scheme to say that even though a level four child cannot be placed in detention, the child can be committed to level eight in order to accomplish confinement. The statute also makes no provision for “temporary” commitments, so this level eight commitment does not even terminate when a level four place becomes available. It is wrong to place a level-four-appropriate child with no prior commitment into a level eight facility with level-eight-appropriate inmates. Also, this level four child will be taking up the place needed for a level eight child. Besides, if the lack of availability were a sufficient reason to change restrictiveness level, level eight children could equally be committed to level four. The statutory scheme plainly does not contemplate that the placement decision be based on availability. The courts can only apply the law, we cannot reinvent it. If the state will not provide a level four facility for appellant, she must go home. She cannot be sent to level eight.

. See also 39.044(10)(a)(1995).