934 So.2d 583 (2006)
A.S., a child, Appellant,
v.
STATE of Florida, Appellee.
No. 1D05-5746.
District Court of Appeal of Florida, First District.
July 20, 2006.
Nancy A. Daniels, Public Defender, and David P. Gauldin, Assistant Public Defender, Tallahassee, for Appellant.
Charlie Crist, Attorney General, Carolyn M. Snurkowski, Assistant Deputy Attorney General, and Tavis Souder, Certified Legal Intern, Tallahassee, for Appellee.
PER CURIAM.
Appellant, A.S., appeals the trial court's Final Disposition Order, in which the court committed him to a maximum-risk residential program. Appellant argues that this disposition must be reversed because the trial court failed to state its reasons for departing from the recommendation of the Department of Juvenile Justice ("DJJ") and failed to make reference to the characteristics of the program vis-a-vis his needs. Because we agree with appellant, we reverse the trial court's disposition and remand for further proceedings.
The State charged appellant with shooting or throwing deadly missiles (Count 1), aggravated assault (Count 2), and carrying a concealed firearm (Count 3). Appellant pled guilty to aggravated assault, and the State agreed to abandon Counts 1 and 3. DJJ's Predisposition Report ("PDR") quoted the police report, which explained that appellant fired shots into a house during a party. The PDR noted appellant's living situation, family life, and interests and listed appellant's prior record, which included commitments to a low-risk residential program and a moderate-risk residential program. After taking these factors into consideration, DJJ recommended that appellant be committed to a high-risk residential program as a result of the aggravated assault.
During the disposition hearing, the trial court read the police report aloud and stated:
This young man, I will note for the record, he had some felony that had some other type disposition going back to 1998. He is now 17 years of age.

*584 Then on December 17th of 2002, he was committed for a felony for burglary. I cannot tell what the commitment was. It may be listed on here. It was probably moderate risk. It was moderate risk.
And then a year later, he had a marijuana charge and he got probation. And then a petit theft commitment, a petit theft in April of this year for which he received a low risk commitment.
So, he has had two prior commitments. He has had two prior commitments, and the one he's going to be committed on today is alet me see what he plead [sic] guilty to.
After the prosecutor informed the court that aggravated assault was a third-degree felony, the court stated, "They're recommending high risk. I'm intending to put him in maximum risk. I'm going to elevate him." The court later stated:
I cannot overlook the fact that from the reporthowever, it was stated here that you're [sic] client showed up at a party with whatever; and that he had a firearm on him or a pistol; and that during the course of the evening, he pulled the firearm, pulled the pistol out and aimed it; and then went out into the front yard, if these facts are true, went out into the front yard and from the front yard position, for whatever reason, aimed his gun and fired it into the house where people were.
And then it stated, and I don't know if it's the first or second shooting, that the one person felt grazed on the head.
. . . .
Which indicated to me that there was a second shot.
The responsibility for those are laid at this young man's feet is going to be a maximum risk.
I'm surprised the State didn't prosecute him as an adult, you know, frankly.
In the Final Disposition Order, the trial court adjudicated appellant delinquent and committed him to a maximum-risk residential program. Thereafter, appellant filed a Motion to Correct Disposition Error pursuant to Florida Rule of Juvenile Procedure 8.135(b)(2), in which he made the same arguments he now makes on appeal. The trial court did not enter an order on the motion within thirty days. Thus, the motion is deemed denied. See Fla. R. Juv. P. 8.135(b)(1)(B). This appeal followed.
Section 985.23(3)(c), Florida Statutes (2005), provides in part:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
We have held that, while section 985.23(3)(c) expressly affords the trial court the discretion to depart from DJJ's recommendation, it does not grant the trial court the authority to reject the recommendation simply because it disagrees with it. See A.C.N. v. State, 727 So.2d 368, 370 (Fla. 1st DCA 1999). The trial court's decision to disregard DJJ's recommendation must be supported by a preponderance of the evidence and must make reference to the characteristics of the restrictiveness level vis-a-vis the child's needs. Id. As such, the proper standard of review is whether the trial court's findings are supported by competent, substantial evidence. Id. If the trial court fails to make specific findings to support its determination and disregards DJJ's recommendation without sufficient reasons, or there is no evidence in the record that the court *585 has considered the PDR, the court's disposition must be reversed. A.G. v. State, 737 So.2d 1244, 1248 (Fla. 5th DCA 1999).
From our review of the record, it appears that the trial court departed from DJJ's recommendation because of appellant's prior record and because he apparently fired two shots into the house. However, the PDR made clear that DJJ was well aware of appellant's prior record and commitments and considered both factors when making its high-risk residential program recommendation. The PDR also made clear that DJJ was aware of the circumstances surrounding the incident at issue, given that DJJ quoted the police report in the PDR. DJJ also took into account appellant's needs. Given DJJ's consideration of these facts, the trial court was required to explain why it reached a different conclusion. Yet, it failed to do so. This failure warrants reversal. See K.B v. State, 923 So.2d 1261, 1262 (Fla. 1st DCA 2006) (holding that the trial court failed to explain why its consideration of the same factors considered by DJJ in its recommendation led it to different conclusion than DJJ); D.B. v. State, 923 So.2d 1259, 1260 (Fla. 1st DCA 2006) (holding that merely restating the facts is legally insufficient to support a deviation from DJJ's recommendation); C.J. v. State, 923 So.2d 553, 554 (Fla. 1st DCA 2006) (holding that the trial court erred because it did not refer to the needs of the child but merely restated the facts already known to DJJ without explaining why its reasons led to a different conclusion); J.W.M. v. State, 911 So.2d 1289, 1290 (Fla. 1st DCA 2005) (holding that the trial court was required to explain why its consideration of the fact that the appellant committed the offense while in school led it to reach a different conclusion than that reached by DJJ given that DJJ was aware of the factor when making its recommendation); N.B. v. State, 911 So.2d 833, 835 (Fla. 1st DCA 2005) (holding that the trial court must explain why it came to a different conclusion than DJJ did); T.S. v. State, 801 So.2d 171, 173 (Fla. 5th DCA 2001) (holding that if the trial court disregards DJJ's recommendation without sufficient reasons, the case must be reversed and remanded).
Moreover, as appellant argues, the trial court failed to explain why a high-risk residential program was insufficient and failed to make reference to the characteristics of the program vis-a-vis appellant's needs, which it was required to do. See N.B., 911 So.2d at 836 (holding that the trial court's findings must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child); X.W. v. State, 903 So.2d 318, 320 (Fla. 2d DCA 2005) (holding that the focus of the disposition should be on the child's needs); C.C.B. v. State, 828 So.2d 429, 433 (Fla. 1st DCA 2002) (holding that sending a message to the community was an invalid reason for deviating from the recommendation when there was a lack of any reference to the restrictiveness level in reference to the needs of the child); A.C.N., 727 So.2d at 370-71 (holding that the trial court erred in not explaining why a more secure residential program was necessary for the appellant and in failing to state how the appellant's offense established a need for twenty-four-hour secure custody, care, and supervision).
Accordingly, we REVERSE the trial court's disposition and REMAND for further proceedings.
BARFIELD, VAN NORTWICK, and LEWIS, JJ., concur.