GROSS, J.
We write to address a narrow issue—whether section 985.433(7)(b), Florida Statutes (2007),[1] requires a trial court *611 to specifically identify the “characteristics of the restrictiveness level imposed vis-a-vis the needs of the juvenile,” when the trial court sentences a juvenile to a different restrictiveness level than that recommended by the Department of Juvenile Justice (“DJJ”). We hold that the statute does not impose such a requirement on a sentencing judge and affirm.
Appellant entered a plea to a felony and violations of probation. The DJJ predisposition report recommended a moderate commitment program. The circuit judge sentenced the juvenile to a level 8 high risk residential program, giving these reasons for the decision:
[H]e has become ungovernable; secondly, he is truly a flight risk; third, gang affiliation; next, danger to — to the public and society. Page 6 of the P.D.R. talks about his violent outbursts, his potential for harming others, uncontrolled anger. And there’s more than support that he is a danger to — to the public-I’m going to accept the statements of the probation officer, her review of the Child and looking at what he wrote on his computer and things of that nature. There is a gang affiliation here. And for all of those reasons, the Court’s going to place him in a Level 8 program.
Section 985.433(7)(b) states:
The court shall commit the child to the department at the restrictiveness level identified [in the recommendation of the Department of Juvenile Justice] or may order placement at a different restrictiveness level. The court shall state for the record the reasons that establish by a preponderance of the evidence why the court is disregarding the assessment of the child and the restrictiveness level recommended by the department.
The substance of section 985.438(7)(b) is identical to that of its predecessor, section 985.23(3)(c), Florida Statutes (2004). In KS. v. State, 835 So.2d 350, 352 (Fla. 4th DCA 2003), we recognized that this statutory language “does not require the court to explain why it is imposing a different restrictiveness level by articulating the ‘characteristics of the restrictiveness level imposed vis-a-vis the needs of the juvenile.’” Id. (quoting S.L.K. v. State, 776 So.2d 1062, 1064 (Fla. 4th DCA 2001)).[2]
Other courts have taken a different approach to the same statutory language. For example, in M.S. v. State, 927 So.2d 1044, 1046 (Fla. 2d DCA 2006), the court wrote that if a trial judge disregards the DJJ assessment of the child, the trial court “must ‘reference the characteristics of the restrictiveness level vis-árvis the needs of the child.’ ” Id. (quoting A.J.V. v. State, 842 So.2d 1027, 1029 (Fla. 2d DCA 2003) (quoting P.R. v. State, 782 So.2d 911, 913 (Fla. 5th DCA 2001))). The M.S. court reversed in part because the trial judge’s reasons for departure “failed to address why the restrictiveness level the trial court selected would better serve M.S.’s needs.” 927 So.2d at 1046.
Cases such as M.S. expanded statutory language to impose a mandatory requirement upon the sentencing judge. This development crept into Florida law from Judge Griffin’s dissent in J.L.O. v. State, *612 721 So.2d 440, 443 (Fla. 5th DCA 1998) (Griffin, J., dissenting), where she wrote that a judge’s reason for departing from a DJJ recommendation “must have reference to the characteristics of the restrictiveness level vis-a-vis the needs of the child.” This general requirement makes sense — a judge’s sentence should address the needs of the child. A level 8 residential program is not appropriate for a gentle first-time offender convicted of a non-violent crime. In A.C.N. v. State, 727 So.2d 368, 370 (Fla. 1st DCA 1999), the court adopted Judge Griffin’s observation as a sentencing requirement under section 985.23, that the reasons for departure “have reference to the characteristics of the restrictiveness level” as they relate to the needs of the child.
In cases that came after A.C.N. and J.L.O., the observation that the bases for a sentencing departure “have reference” to the sentence imposed morphed into the requirement that the trial judge articulate at sentencing how the characteristics of a restrictiveness level address the needs of the child. Thus in A.G. v. State, 737 So.2d 1244, 1247 (Fla. 5th DCA 1999), the court wrote: “Not only must the court state in writing or on the record its reasons for disregarding the recommended level, but in addition, the reasons must reference the characteristics of the restrictiveness level vis-a-vis the needs of the child.” Although A.G. cited A.C.N. in support of this proposition, the case expanded the language of A.C.N. by changing the phrase “have reference to” to “reference.” See also J.M. v. State, 939 So.2d 1138, 1139 (Fla. 5th DCA 2006) (relying on A.G. for the proposition that a judge disregarding a DJJ commitment recommendation “must state its reasons and ‘must reference the characteristics of the restrictiveness level vis-a-vis the needs of the child’”); R.T. v. State, 946 So.2d 112, 113 (Fla. 1st DCA 2007). In this way, a general concept of relatedness evolved into a judge’s obligation to articulate the precise connection between a sentence and the child’s needs.
In this case, the trial court adequately provided its reasons for disregarding DJJ’s recommendation and those reasons were “supported by a preponderance of the evidence.” K.S., 835 So.2d at 351. The pre-disposition report indicated that appellant stole and attempted to cash a personal check belonging to his foster mother. The foster mother testified that the appellant’s wrongdoing involved other checks that would likely result in future charges. She pointed out that “there is no guarantee that [appellant’s not going to come back and bite the other hand that’s been feeding him all along.” She testified that the appellant lies and that “nothing had changed.” She said that her daughter was doing better with appellant out of the house, and that she would not take the appellant back because she no longer trusts him. Appellant’s foster mother also expressed concern that the appellant would “take off’ again. Appellant’s probation officer confirmed that the juvenile was a flight risk. In fact, in his comprehensive evaluation, appellant readily admitted that he was a “runner.”
The PDR indicated that there was evidence of “violent outbursts displays of temper, and uncontrolled anger indicating [a] potential for harm not included in [the] criminal history;” that appellant did not have empathy for his victim(s); that he was habitually truant from school during [] most of the term; and that appellant engaged in verbal intimidation, yelling, and heated arguments with family members. Finally the report stated that the juvenile began using alcohol and marijuana at the age of thirteen. Even without the finding of a gang affiliation, for which the evidence was flimsy, there was adequate evidence *613 that appellant was ungovernable, a flight risk, and a danger to the public. See K.S., 835 So.2d at 351; C.T. v. State, 819 So.2d 869 (Fla. 4th DCA 2002).
We affirm the sentence and certify conflict with M.S. v. State.
WARNER and FARMER, JJ., concur.

. Previously, section 985.433(7)(b) was contained at section 985.23(3)(c), Florida Statutes (2004). Section 985.23(3)(c) provided in pertinent part:
The court shall commit the child to the department at the restrictiveness level identified or may order placement at a different restrictiveness level. The court shall state for the record the reasons which establish by a preponderance of the evidence why the court is disregarding the assessment of the *611 child and the restrictiveness level recommended by the department.
Section 985.23 was renumbered as 985.433 and amended by Laws 2006, c. 2006-120, § 45, effective Jan. 1, 2007.

. Construing section 985.23(3)(c), the S.L.K. court wrote that "the reasons set forth by the court for disregarding the recommendation level [suggested by DJJ] must reference the characteristics of the restrictiveness level visa-vis the needs of the child.” 776 So.2d at 1064. In K.S., we characterized this language as dicta. 835 So.2d at 352.